United States District Court
Southern District of Texas

**ENTERED**

April 08, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **EDWIN SEBASTIAN GUANOQUIZA TOAQUIZA,** | § § § | |
| **Petitioner,** | § § § | |
| **VS.** | § § | **CIVIL ACTION NO. 5:26-CV-00376** |
| **TINA ALBA,** *et al.*, | § § § | |
| **Respondents.** | § | |

**ORDER**

Pending before the Court is Petitioner Edwin Sebastian Guanoquiza Toaquiza's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. 1), challenging the lawfulness of his detention by Immigration and Customs Enforcement (ICE) officials with the Department of Homeland Security (DHS). For the following reasons, Petitioner's petition, (Dkt. 1), is GRANTED.

**BACKGROUND**

**A. Factual Background**

Petitioner is 29-year-old national of Ecuador who entered the U.S. without inspection near Lukeville, Arizona on December 29, 2024. (*See* Dkt. 1 at 7; Dkt. 10 at 2.) Petitioner was apprehended by immigration authorities in the interior and issued a Notice to Appear (NTA), charging him with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i). (Dkt. 1 at 7, Attach. 1 at 2; Dkt. 10 at 2.) Petitioner was released on an Order of Release on Recognizance on December 30, 2024, pending the outcome of his removal proceedings. (Dkt. 1 at 7, Attach. 1 at 4; Dkt. 10 at 2.) Prior to his redetention, Petitioner lived in Minnesota with his partner and their son. (Dkt. 1 at 7.)

1 / 10

On January 15, 2026, ICE re-detained Petitioner during a routine check-in. (*See id.* at 7; Dkt. 10 at 2.) Petitioner was transported to the LaSalle County Regional Detention Center in Encinal, Texas and later to the South Texas ICE Processing Center in Pearsall, Texas on March 12, 2026, where he currently remains detained. (*See* Dkt. 1 at 7; Dkt. 10 at 2, Attach. 1.) Respondents argue that he is lawfully detained subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Dkt. 10 at 3.) Petitioner argues he is being unlawfully detained under 8 U.S.C. § 1225(b)(2) in violation of the Immigration and Nationality Act (INA), the Due Process Clause of the Fifth Amendment, and the *Maldonado Bautista* Bond Eligible Class judgment. (Dkt. 1 at 31–32.) He asks the Court to order his immediate release from custody or, alternatively, an individualized custody redetermination hearing. (*Id*. at 33–34.)

## B.  Procedural Background

Petitioner filed his Petition for Writ of Habeas Corpus on March 12, 2026. (Dkt. 1.) The Court ordered Respondents to respond to Petitioner's petition on or before March 18, 2026, (Dkt. 4), and Respondents filed a timely response. (Dkt. 10.) Petitioner subsequently filed a reply. (Dkt. 11.) In the response and reply, Respondents and Petitioner notified the Court that Petitioner was transferred from the LaSalle County Regional Detention Center in Encinal, Texas, to the South Texas ICE Processing Center in Pearsall, Texas, located within the jurisdiction of the Western District of Texas, the same day that his habeas petition was originally filed with the Court. (Dkt. 10 at 2, Attach. 1; Dkt. 11 at 1 n.1.) Petitioner stated in his reply that his transfer outside of the Court's jurisdiction occurred after his petition was filed with the Court. (Dkt. 11 at 1 n.1.) On March 25, 2026, Respondents filed an advisory, (Dkt. 13), in response to the Court's Order dated March 23, 2026, (Dkt. 12), confirming that Petitioner's transfer occurred after his petition was filed with the Court.

Respondents also advised the Court that on March 23, 2026, an Immigration Judge (IJ) entered an order in Petitioner's removal case granting voluntary departure under safeguards. (Dkt. 13 at 1, Attach. 1.) Furthermore, in compliance with the Court's previous order requiring Respondents to notify the Court of any anticipated or planned transfer or removal of the Petitioner at least five days in advance, (Dkt. 4 at 2), Respondents filed an additional advisory indicating DHS's intent to effectuate the voluntary departure no earlier than five days from the date of the advisory. (Dkt. 14.) In response, Petitioner filed a notice in which he stated his opposition to the voluntary departure under safeguards ordered by the IJ and advised the Court that the order was entered at a hearing scheduled that same morning with very little notice to Petitioner, and where Petitioner asked for and was denied the opportunity to consult with counsel before proceeding. (Dkt. 15 at 2.) In light of this, the Court ordered additional briefing from the parties as to what effect, if any, the IJ's order providing for voluntary departure with safeguards has on Petitioner's claims before the Court, (Dkt. 16), and the parties filed additional briefing on this issue. (*See* Dkts. 17, 18.) In his briefing, Petitioner also notified the Court that on March 27, 2026, he filed a Notice of Appeal of the IJ's voluntary departure order with the Board of Immigration Appeals (BIA). (Dkt. 18 at 3, Attachs. 1, 2.)

## Discussion

### A.  IJ's Voluntary Departure Order

The Court begins by addressing the effect of the IJ's voluntary departure order dated March 23, 2026, (Dkt. 13, Attach. 1), on Petitioner's pending claims before the Court. Respondents argue that Petitioner's claims are moot because the IJ's order providing for voluntary departure with safeguards includes a detention requirement because "voluntary departure with (or under) safeguards commonly refers to 'the requirement that an alien remain in custody until he or she

3 / 10

departs from the United States.'" (Dkt. 17 at 2) (citing *Matter of M-A-S-*, 24 I&N Dec. 24 I. & N. Dec. 762, 766 (BIA 2009)). As a result, Respondents argue that "Petitioner's detention is no longer under § 1225 or § 1226," and is instead authorized by the conditions of the IJ's order granting voluntary departure as a discretionary form of relief to Petitioner based on his agreement to its terms. (*See id.* at 2, Attach. 1.) Furthermore, Respondents argue that in order to be granted voluntary departure, Petitioner was required to agree to the terms of voluntary departure in 8 C.F.R. § 1240.26(b) and that any filing of a motion to reconsider, reopen, or other challenge to the voluntary departure order converts the order into an order of removal. (*Id.* at 2.)

Petitioner counters that his habeas claims are not moot because he has since challenged the IJ's voluntary departure order as invalid by filing an appeal with the BIA on March 27, 2026. (Dkt. 18 at 4–5.) He argues that the filing of a valid appeal causes the order to be automatically stayed pending the outcome of the appeal and thus, the voluntary departure order has no current force of law. (*Id.*) Additionally, Petitioner argues that the filing of an appeal with the BIA does not convert the IJ's voluntary departure order into a removal order under the relevant regulations. (*Id.* at 6–7.) Finally, Petitioner also argues alternatively that even if his voluntary departure order is currently in effect, it contains no detention requirement. (*Id.* at 7–8.)

The Court agrees with Petitioner that his appeal of the IJ's voluntary departure order has stayed its effect and that the order has not been converted into an order of removal. The timely appeal of a voluntary departure order stays its effects pending appeal. *See Matter of A-M-*, 23 I. & N. Dec. 737, 743–44 (BIA 2005) ("[T]he timely filing of an appeal with the Board stays the execution of the decision of the Immigration Judge during the pendency of the appeal and tolls the running of the time authorized by the Immigration Judge for voluntary departure." (citing 8 U.S.C. § 1101(a)(47)(B)(i))); *Moorani v. Gonzales*, 182 F. App'x 352, 353 (5th Cir. 2006) (unpublished)

4 / 10

("[The noncitizen] appealed, which automatically tolled the running of the voluntary departure period."); *see also* 8 C.F.R. § 1003.6(a) ("[T]he decision in any proceeding . . . from which an appeal to the Board may be taken shall not be executed during the time allowed for the filing of an appeal unless a waiver of the right to appeal is filed, nor shall such decision be executed while an appeal is pending . . . ."). This remains true even when the petitioner has purportedly waived the appeal period in the special case that the petitioner is appealing the validity of that waiver to the BIA. *See Hernandez-Ortez v. Holder*, 741 F.3d 644, 647 (5th Cir. 2014) ("[T]he validity of a waiver of appeal may be challenged and the BIA is 'not divested of jurisdiction where the waiver is not valid.'" (citing *Matter of Patino*, 23 I. & N. Dec. 74, 76 (BIA 2001)); *also Kohwarien v. Holder*, 635 F.3d 174, 179 (5th Cir. 2011); *Narine v. Holder*, 559 F.3d 246, 248–49 (4th Cir. 2009). Additionally, the filing of an appeal to the BIA does not automatically cause an order granting voluntary departure to convert into a removal order under 8 C.F.R. § 1240.26(b) because the relevant regulations only prescribe for such automatic conversion in the case that the noncitizen files a motion to reopen or motion to reconsider with the IJ. *See* 8 C.F.R. § 1240.26(b)(iii) ("If the alien files a post-decision *motion to reopen* or *reconsider* during the period allowed for voluntary departure, the grant of voluntary departure shall be terminated automatically, and the alternate order of removal will take effect immediately." (emphasis added)).

Here, Petitioner appealed within the thirty-day window and, although he waived his right to appeal according to the IJ's order, (Dkt. 13, Attach. 1), he challenges through his appeal the validity of that waiver at the BIA among other grounds. (Dkt. 18 at 5, Attach. 1 at 4.) Petitioner also has not filed a motion to reopen or reconsider with the IJ and has instead only opted to challenge the validity of the voluntary departure order on appeal to the BIA. (*Id.*) Thus, having determined that any conditions of the IJ's voluntary departure order are properly stayed pending

Petitioner's appeal to the BIA and that the IJ's order did not automatically convert into a removal order upon appeal, the Court may consider Petitioner's due process challenge to his ongoing detention.[1]

### B. Petitioner's Due Process Claim

Having found that Petitioner's claims are not moot, the Court now turns to Petitioner's claim that he is unlawfully detained in immigration custody in violation of his rights under the Due Process Clause of the Fifth Amendment and the INA pursuant to the mandatory detention provision in 8 U.S.C. § 1225(b)(2). On February 6, 2026, the United States Court of Appeals for the Fifth Circuit addressed the dispute over the statutory interpretation of 8 U.S.C. § 1225(b)(2)'s mandatory detention provision in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). In the precedential decision, the Fifth Circuit determined that noncitizens apprehended in the interior who entered without inspection are "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and therefore are not entitled to bond hearings under 8 U.S.C. § 1226(a). *Id.* at 498. The decision was limited to the statutory interpretation of the applicable provisions and left unresolved other claims brought by petitioners challenging their mandatory detention, including constitutional questions under the Due Process Clause. *Id.* at 508.

Upon review of Petitioner's case, the Court finds that Petitioner's due process claim presents nearly identical legal questions to those previously considered by the Court in *Bonilla Chicas v. Warden*, 2026 WL 539475 (S.D. Tex. Feb. 20, 2026), in which the Court determined that the petitioner's detention by ICE violated his rights under the Due Process Clause. Respondents now raise an argument that Petitioner's due process claim is improperly characterized

---

[1] Given that the Court has determined that it may review Petitioner's claims based on the pending appeal of the IJ's voluntary departure order to the BIA, it will not reach Petitioner's other alternative arguments.

6 / 10

as a procedural challenge and that petitioner's substantive due process rights are limited to those set out in statute. (*See* Dkt. 10 at 10–16.) Respondents mainly rely on *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003), in addition to citing a line of similar cases. (*See id.* at 10–13) (citing *Reno v. Flores*, 507 U.S. 292, 308 (1993); *Michael H. v. Gerald D.*, 491 U.S. 110, 119–21 (1989); *Duarte v. City of Lewisville, Texas*, 858 F.3d 348 (5th Cir. 2017)).

However, Respondents' arguments continue to ignore a critical point: noncitizens' constitutional rights are not limited to those set out in statute. The cases Respondents cite address whether procedural due process claims can consider factors not specifically enumerated in statute. Significantly, these cases do not address due process protections derived from the fundamental right to liberty and freedom from imprisonment guaranteed by the Fifth Amendment of the Constitution. Nor do the cases cited by Respondents stand for the proposition that noncitizens are not guaranteed these fundamental rights.[2] And the Court has already found that noncitizens have a protected liberty interest and a right to freedom from detention by virtue of establishing a presence in the United States. *See Bonilla Chicas*, 2026 WL 539475 at *6–7.

As is well established, the Fifth Amendment's Due Process Clause applies to noncitizens and guarantees rights in addition to those set out by Congress in statute. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or

---

[2] The Court also finds that Respondents' cases are not factually comparable to Petitioner's case. In *Doe*, the Supreme Court rejected a challenge to a state sex offender registration law that required him to register without a hearing on whether he was "currently dangerous" because his underlying criminal conviction required registration. 538 U.S. at 6. Registration of convicted sex offenders is not comparable to civil immigration detention. *See Gomez Hernandez, v. ICE Field Off. Dir., El Paso, Texas et al.*, 2026 WL 503958, at *2 (W.D. Tex. Feb. 23, 2026) ("*Doe* arose in an entirely different context—a challenge to a sex offender registration statute—and did not address an immigration detainee's challenge to their detention without a bond hearing.").

permanent."); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("even aliens shall not be …

deprived of life, liberty, or property without due process of law"); *see also Yamataya v. Fisher*,

189 U.S. 86, 100-01 (1903); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). Moreover, "[f]reedom from

imprisonment—from government custody, detention, or other forms of physical restraint—lies at

the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *see also*

*Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at

the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").

For this reason, punitive civil detention violates due process. *See Kansas v. Hendricks*, 521 U.S.

346-57, 356 (1997); *United States v. Salerno*, 481 U.S. 739, 746 (1987). Civil immigration

detention is permissible only to the extent that it is reasonably related to the purposes of ensuring

appearance at proceedings and protecting the community from danger. *See Zadvydas*, 533 U.S. at

690; *Foucha*, 504 U.S. at 72 ("Due process requires that the nature of commitment bear some

reasonable relation to the purpose for which the individual is committed." (citing *Jones v. United*

*States,* 463 U.S. 354, 368 (1983)). Noncitizens who have established a presence in the United

States have a protected liberty interest and a right to freedom from punitive civil detention that

derives from the Constitution and guarantees due process protections under the Fifth Amendment's

Due Process Clause. *See Rodriguez v. Frink*, 2026 WL 709487, at *4–5 (S.D. Tex. Mar. 13, 2026).

Thus, Respondents' reliance on cases that do not consider violations of the constitutional right to

freedom from imprisonment is misplaced.

Because Petitioner's legal claims are materially indistinguishable from those considered

by the Court in *Bonilla Chicas* and because Respondents have failed to offer controlling precedent

or reasoning that would justify reaching a different result in this case, the Court is unpersuaded to

alter its prior analysis of the issue. In accordance with its prior analysis, the Court holds that

because Petitioner is a noncitizen who previously entered the United States without inspection and has established ties to the United States through his residency, the Due Process Clause of the Fifth Amendment guarantees Petitioner an individualized assessment of his flight risk and dangerousness and an opportunity to respond prior to detention by ICE. This conclusion is further supported by the growing number of district courts that have likewise found that mandatory detention of noncitizens who have established a presence in the United States violates their procedural due process rights. *See, e.g.*, *Vieira v. De Anda-Ybarra*, 2025 WL 2937880, at *7 (W.D. Tex. Oct. 16, 2025); *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 687 (W.D. Tex. 2025) (collecting cases); *Hernandez-Fernandez v. Lyons*, 2025 WL 2976923, at *7 (W.D. Tex. Oct. 21, 2025); *Marceau v. Noem et al.*, 2026 WL 368953, at *2 (W.D. Tex. Feb. 9, 2026); *Clemente Ceballos v. Garite,* 3:26-cv-00312-DB, at *3 n.2 (W.D. Tex. Feb 10, 2026).

Thus, the Court holds that because Petitioner's detention violates his rights under the Due Process Clause of the Fifth Amendment, he is entitled to equitable relief and that the appropriate remedy is Petitioner's immediate release from custody with additional safeguards against redetention.

### CONCLUSION

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED**. The Respondents' Response to the Petitioner for Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. 10), is **DENIED**.

1.      Respondents are **ORDERED** to **RELEASE** Petitioner from custody immediately, under reasonable conditions of release, and to submit a status report to the Court confirming Petitioner's release within 24 hours of the date of this Order.

2.      Respondents must notify Petitioner's counsel of the exact time and location of Petitioner's release **no less than three hours** prior to Petitioner's release from custody.

3.      If Petitioner is redetained, all applicable regulations and procedures must be followed, including that Petitioner be afforded an individualized assessment of Petitioner's flight risk and dangerousness as guaranteed under the Due Process Clause of the Fifth Amendment.

4.      Respondents must return any and all identification documents and personal belongings taken from Petitioner at the time of apprehension or during detention.

5.      Within two weeks of the date of this Order, the parties shall **FILE** advisories with the Court indicating whether the parties oppose entry of a final judgment in this case.

IT IS SO ORDERED.

SIGNED this April 7, 2026.

Diana Saldaña
United States District Judge